**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GAGIK PETROSYAN,

Petitioner,

v.

FERETI SEMAIA, et al.,

Respondents.

No. 5:26-cv-02266-DSR

**ORDER GRANTING WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE**

## 1. INTRODUCTION AND PROCEDURAL BACKGROUND

On April 30, 2026, Petitioner Gagik Petrosyan ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since April 28, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1. The Petition names as Respondents the Warden of the Adelanto detention facility where Petitioner is detained, the Secretary of the Department of Homeland Security, the Director of Immigration and Customs Enforcement ("ICE"), and the Director of the Los Angeles Field Office of ICE, each in his or her official capacity (collectively "Respondents"). Petitioner seeks a Writ ordering Respondents to release Petitioner immediately from immigration custody.

On May 1, 2026, the the Court ordered the Clerk to serve on Respondents a copy of the Petition and ordered Respondents to answer the Petition. See Doc. No.

5. On May 8, 2026, Respondents filed their Answer. See Doc. No. 6. On May 11, Petitioner filed a Reply to Respondent's Answer. See Doc. No. 7. On May 14, 2026, the Court issued an Order Requesting Further Briefing on the question of whether "Petitioner stands criminally 'charged with' a violation of Penal Code Section 243(d)," and if not, "whether an arrest, and subsequent release for such offense, nevertheless renders a person subject to mandatory detention under Section 1226(c)(1)(E)." See Doc. No. 8. On May 18, 2026, Respondents filed the supplemental brief in response to the Court's Order. See Doc. No. 9. Petitioner filed his supplemental brief the following day. See Doc. No. 10.

On June 8, 2026, Petitioner voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and entry of judgment. See Doc. No. 12. On June 8, 2026, the previously assigned District Judge approved the parties' consent, according to General Order 26-05. See Doc. No. 13.

The Court has read and considered all papers filed by each side. For the reasons discussed below, the Court **GRANTS** the Petition for Writ of Habeas Corpus and orders that Respondents immediately release Petitioner from their custody.

## 2. FACTUAL BACKGROUND

Petitioner is a native and citizen of Armenia. Pet at ¶ 2. On October 22, 2023, he entered the United States and applied for admission at the Calexico Port of Entry. Id., Answer at 2:16-21. Petitioner was placed in immigration custody through issuance of a Notice to Appear, charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(a)(i)(I), and then was paroled into the United States. Id. From the time of that release until April 28, 2026, Petitioner alleges that he "complied fully with all ICE reporting requirements, maintained employment, and established substantial community ties. He has no criminal convictions whatsoever." Pet. at ¶ 3.

Respondents, however, allege that ICE records show Petitioner "violated his release conditions by missing biometric check-ins on January 19, February 19, March 19, and April 27, 2026." Answer at 2:24-26. Furthermore, Respondents assert that Petitioner was arrested on April 24, 2026, by the Los Angeles Police Department for battery causing serious bodily injury in violation of California Penal Code Section 243(d). Answer at 2:28-3:2. Petitioner acknowledges in his Petition that he "was involved in an altercation shortly before his detention; however, no conviction has resulted, and no adjudication has established any wrongdoing." Pet. at ¶ 21.

On April 28, 2026, Petitioner appeared for a scheduled ICE check-in. Pet. at ¶ 4. Instead of following the normal check-in procedure that day, Petitioner alleges he was "abruptly taken into custody without prior notice, without a hearing, and without any meaningful individualized determination of necessity." Id. Petitioner was taken to the ICE detention facility in Adelanto, California, where he remains. Id. at ¶ 11.

**3. LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'" Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024). Petitioner makes such reviewable claims here.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012). However, because this requirement is "prudential" and not a

"jurisdictional prerequisite," it is subject to waiver. Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional."). Here, Respondents do not assert any failure by Petitioner to exhaust available administrative remedies. See generally Doc. No. 6. Thus, any potential issue of exhaustion is waived. The Court therefore proceeds to consider the merits of the Petition.

## 4. DISCUSSION

### A. Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1226(C)(1)(E)(ii)

Petitioner contends that Respondents violated his Fifth Amendment rights by failing to afford him written notice or meaningful opportunity to be heard by a neutral decisionmaker prior to his re-detention. Respondents contend that Petitioner's re-detention is constitutionally permissible because Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E)(ii). See Answer at 3:5-7; see generally Doc. No. 9.

Respondents allege only that Petitioner was arrested for the aforementioned battery offense. See Answer at 3:5-7. Despite the Court's clear and explicit Order directing further briefing on the question of whether "Petitioner stands criminally **'charged with'** a violation of Penal Code Section 243(d)," see Doc. No. 8, Respondents failed to address this question in their supplemental brief. See Doc. No. 9. Petitioner, however, provides in his supplemental brief that at the time of filing (May 19. 2026, nearly a month after the arrest) "Petitioner has not been charged with any criminal offense arising from the allegations referenced by Respondents." See Doc. No. 10 at 2:2-3. Thus, the Court proceeds with the undisputed understanding that Petitioner has not been criminally charged with a violation of Penal Code Section 243(d).

Section 1226(c)(1)(E), which was enacted in January 2025 as part of the Laken Riley Act, states:

> The Attorney General shall take into custody any alien who—
>
> ...
>
> (E) (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E)

Petitioner's Notice to Appear provides, and Petitioner does not contest, that he is inadmissible pursuant to Section 212 (a)(7)(A)(i)(I) of the Immigration and Nationality Act (codified as 8 U.S.C. § 1182(7)(A)(i)(l)). See Doc. No. 1, Exhibit. B. Petitioner therefore fits the criteria set forth in Section 1226 (c)(1)(E)(i). Petitioner was not charged with a violation of Penal Code Section 243(d) and thus was also not convicted. He further does not admit to having committed acts which constitute the essential elements of Section 243(d). Thus, the question becomes whether Petitioner's arrest for violation of Penal Code § 243(d) and prompt release from custody prior to being detained by ICE, without criminal charges ever being filed, subjects him to mandatory detention under Section 1226(c)(1)(E)(ii). The Court concludes that it does not.

Based upon the plain and unambiguous language of Section 1226(c)(1)(E)(ii), qualifying noncitizens are subject to mandatory detention only if they are presently

"charged with, arrested for, convicted of, or admit[]" to committing certain enumerated crimes. Congress used the present tense "is arrested for," as opposed to was or has been arrested, when defining the scope of the obligation to detain. See Rivera Guzman v. Arteta, No. 26 Civ. 2808 (DEH), 2026 WL 1045920, at *3 (S.D.N.Y. Apr. 16, 2026). Under the common usage of the English language, "is" refers to present tense; not the past tense. See e.g., is, Merriam-Webster, https://www.merriam-webster.com/dictionary/is (last visited September 18, 2026) ("present tense third-person singular of BE"); is, Blacks Law Dictionary (6th ed. 1990) ("This word … normally refer[s] to the present"); see also Bonnichsen v. U.S., 367 F.3d 864, 875 (9th Cir. 2004) ("Congress, by using the phrase 'is indigenous' in the present tense, referred to presently existing tribes, peoples, or cultures."); Guidiville Band of Pomo Indians v. NGV Gaming, Ltd., 531 F.3d 767, 770 (9th Cir. 2008) (the "most basic" use of "is" refers to the "present-tense sense of word").

"The use of the present tense [in Section 1226(c)(1)(E)(ii)] is conspicuous and important." Helbrum v. Williams Olson, No. 25 Civ. 349, 2025 WL 2840273, at *5 (S.D. Iowa Sep. 30, 2025) (citing Stanley v. City of Sanford, 606 U.S. 46, 52 (2025)) ("[T]o ascertain a statute's temporal reach,' this Court has 'frequently looked to Congress' choice of verb tense."). Under the common usage of the English language, if a person was arrested but then subsequently released, we would not continue to say the person "is arrested for" that crime. See id. Had Congress intended to make detention mandatory for anyone who was simply arrested for an enumerated offense but then released, regardless of whether charges were ultimately brought, it certainly knew how. Rueda Torres v. Francis, No. 25 CIV 8408 (DEH), 2025 WL 3168759, at *5 (S.D.N.Y Nov. 13, 2025), appeal withdrawn sub nom. Torres v. Genalo, No. 26-115, 2026 WL 1091200 (2d Cir. Apr. 15, 2026). Thus, the conspicuous use of the present tense in Section 1226(c)(1)(E)(ii) supports the conclusion that it is only applicable to qualifying non-citizens who are presently under arrest.

Other District Courts have similarly concluded that the plain and unambiguous language of Section 1226(c)(1)(E)(ii) demands it be read in the present tense. See e.g., E.C. v. Noem, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264, at *11 (D. Nev. Oct. 14, 2025) ("The Court finds that the statutory text's reference to a person who 'is charged with' or 'is arrested' for a theft-related offense, in the present tense, cannot be read to apply to a person who has previously been arrested for and charged with a crime where they have also been acquitted of the crime."); Rueda Torres, 2025 WL 3168759, at *5 ("Thus, while detention is mandatory immediately following an arrest, it is no longer required if charges are not ultimately filed."); Carlos E. V. v. Bondi, No. 26-cv-1618 (LMP/DJF), 2026 WL 765357, at *2 (D. Minn. Mar. 18, 2026) ("8 U.S.C. § 1226(c)(1)(E)(ii) requires the detention of a noncitizen who 'is' (present tense) 'arrested for' a qualifying offense."); see also Badalyan v. Bondi, No. ED CV 26-1401 FMO (JDE), 2026 WL 1365087, at *1 n.1 (C.D. Cal. May 15, 2026).

District Courts have similarly denounced the interpretation advanced by Respondents because of the serious constitutional implications it poses. See Singh v. Chestnut, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) ("[R]equiring mandatory detention because of a mere arrest for which prosecutors concluded they did not have sufficient evidence to charge Petitioner with a crime, raises serious due process concerns. [] To avoid these concerns, courts have construed the Laken Riley Act to apply only where an individual is currently charged with or arrested for the enumerated crimes, and concluding mandatory detention is not required when charges are never filed[.]") (citing Helbrum, 2025 WL 2840273, at *6); Brandon Y.M., v. Andrews., No. 1:25-cv-01962-SKO (HC), 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) ("The Court further finds serious constitutional concerns would be presented if the LRA encompassed Petitioner's arrest and subsequent release without the filing of a formal accusatory pleading.").

Individuals subject to mandatory detention under Section 1226(C)(1)(E)(ii) receive due process through their ongoing criminal proceedings. See Demore v. Kim, 538 U.S. 510, 513 (2003); see also Gomez v. Bondi, No. SA-26-CA-00727-XR, 2026 WL 753307, at *12 (W.D. Tex. Mar. 13, 2026) (noting that "process concerns' as to mandatory detention under Section 1226(c) are somewhat mitigated not only by class-specific Congressional findings but by the robust procedural protections afforded in the underlying criminal matter."). Individuals who are merely arrested and promptly released and then not charged with a crime would be deprived of any process to contest the basis for their detention. See S.E. v. Noem, No. 1:26-cv-00356-DAD-SCR, 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026) ("petitioner will not be provided process through the criminal system to contest the basis for his arrest, because prosecution was rejected, charges have not been filed and the investigation of the incident in question has been closed."). Respondents' interpretation is therefore not only inconsistent with the plain language of the statute, but also poses problematic constitutional implications which should be avoided. See Jennings v. Rodriguez, 583 U.S. 281, 286 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

Respondents' contention that the language "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense" mandates detention of Petitioner is unavailing. See Doc. No. 10 at 2. This language mandates detention despite a noncitizen's release from immigration custody – identifying the various ways in which a noncitizen can be released from immigration custody. The Court does not construe the provision

as mandating detention for past arrests that did not result in criminal charges, and Respondents cite no legal authority to argue otherwise.

It is undisputed that Petitioner was released from LAPD custody prior to his re-detention by ICE. See Doc. No. 9 at 2:11-13. It is likewise uncontroverted that no criminal charges were pending at the time of his re-detention by ICE, or for at least several weeks thereafter. See Doc. No. 10 at 2:2-3. Thus, Petitioner is not presently arrested for or charged with an enumerated crime under Section 1226(c)(1)(E)(ii), and therefore not subject to mandatory detention under that subdivision. The question becomes, then, whether Petitioner's discretionary re-detention comported with due process.

**B. Respondents' Deprivation of Petitioner's Liberty Interest Failed to Comply with the Requirements of Due Process**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const. amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's

constitutionally protected interest in avoiding physical restraint.'" Id. at 990 (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir. 1998). The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If such a constitutionally protected interest exists, the second step applies a three-factor balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required. Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

**i. Petitioner Has a Constitutionally Protected Liberty Interest in His Conditional Release**

As noted above, following Petitioner's entry into the United States Petitioner was initially placed in immigration custody and then paroled into the United States. See Pet. at ¶ 6, Answer at 2:16-21. Numerous Federal Courts have recognized a constitutionally protected liberty interest in such release. Noncitizens in such circumstances "gained a liberty interest in their continued freedom when DHS elected to release them on their own recognizance under section 1226(a), which implied a promise that they would not be re-detained so long as they abided by the terms of their release." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 934 (N.D. Cal. 2025); see also Zheng v. Noem, No. EDCV 26-0675 JGB (RAO), 2026 WL 851434, at *3 (C.D. Cal. Mar. 25, 2026) ("the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance."); Gourav v. Janecka, et al., No. EDCV 26-01253-MWF (DSR), 2026 WL 966568, at *2 (C.D. Cal. Apr. 7, 2026) (noncitizen detained upon entry without

inspection and seeking asylum who was then released on his own recognizance pending removal proceedings and who thereafter attended his check-ins and immigration court hearings, obtained work authorization, and lived in the community for two years had a protected liberty interest in remaining out of custody following his release on his own recognizance); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1067, 1069 (E.D. Cal. 2025) (noncitizen detained at border then released pending removal proceedings has protected liberty interest in that own-recognizance release for purposes of due process analysis). The release of a noncitizen apprehended at the border is an implicit promise that he or she would be able to stay free from detention for the duration of administrative proceedings absent changed circumstances, and thus a protected liberty interest for purposes of due process analysis. See Banol, v. Warden, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026).

This Court agrees with those cited above that Petitioner has a constitutionally protected liberty interest in his release, of which he was deprived of when Respondents re-detained him.

**ii. Matthews v. Eldridge Factors**

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at

332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). Here, the balance favors Petitioner.

**a. Private Interest**

Petitioner's private interest is substantial. As discussed above, Petitioner has a recognized interest in his liberty since being released. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690. As such, the first Mathews factor weighs strongly in Petitioner's favor.

**b. Risk of Erroneous Deprivation**

Regarding the second Mathews factor, the risk of erroneous deprivation of that interest through the procedures used is significant because there do not appear to have been any procedures used to determine whether there were grounds to revoke Petitioner's conditional release. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690. "Under federal regulation, DHS's decisions to release [noncitizens] on own recognizance necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk." Valencia Zapata, 801 F. Supp. 3d at 934 (citing 8 C.F.R. § 1236.1(c)(8)); see also J.A.E.M., 812 F. Supp. 3d at 1064 (release on own recognizance reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk) (quoting Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017)).

Petitioner's arrest by local police and his alleged missed biometric check-ins may constitute changed circumstances justifying revocation of his conditional

release, but they also may not justify such revocation. For example, the arrest could have been mistaken, and Petitioner could be innocent of the state charges. He is, after all, presumed so. Similarly, even Respondents admit that the alleged missed biometric check-ins are disputed. See Answer at 4:8-18.

As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard. [Citations omitted]. Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error. Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]" [Citation omitted]. A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026).

Whether there were grounds to justify revocation of Petitioner's conditional release – because of his arrest and release by local police, the allegedly-missed biometric check-ins, something else – is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of that interest. Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for his detention." Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229

at *5 (C.D. Cal. Jan. 13, 2026). Thus, the second Mathews factor similarly favors Petitioner in this case.

**c. Government Interest**

Regarding the third Mathews factor, Respondents do not assert any countervailing interest. Nevertheless, Respondent's may have a valid reason to revoke Petitioner's parole. The relevant interest in this prong of the Mathews analysis, however, is not an interest in such revocation itself, but rather any interest in summarily revoking conditional release without any notice or opportunity to be heard. Courts have routinely recognized that such interest is "low." See, e.g., Gourav, 2026 WL 966568 at *3; Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025); see also Cornejo v. Andrews, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748 at *10 (E.D. Cal. Jan. 29, 2026) (the government interests in protecting the public from harm and preventing the noncitizen's flight "are adequately protected by having a neutral adjudicator evaluate whether a noncitizen presents these risks."); Telenchana v. Hermosillo, No. 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) ("[T]he governments interest in [petitioner's] re-detention without adequate process is minimal or non-existent."); Chel v. Larose, No. 26CV1114-LL-BLM, 2026 WL 926902, at *3 (S.D. Cal. Apr. 6, 2026) ("[T]he government's interest in detaining Petitioner without notice, reasoning, and a hearing is low.").

Thus, the Matthews balance tips decidedly in favor of Petitioner on this record. The Court therefore concludes that the revocation of Petitioner's parole and resulting re-detention on April 28, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026);

Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

**C. A Post-Deprivation Bond Hearing Does Not Cure the Due Process Violation**

Respondents contend that Petitioner's request for immediate release is improper given the "factual disputes" concerning his compliance with ICE reporting requirements and risk of flight/danger. See Answer at 4:6-22. They further argue that if a due process violation is shown that "the proper remedy is a prompt individualized custody determination or bond hearing." Id. at 5:28-6:1.

Respondents have the order backward – the time to resolve any factual disputes about whether there were grounds to revoke Petitioner's constitutionally protected interest in his conditional release was before that deprivation, not after. "Due process generally includes an opportunity for some type of hearing before the deprivation of a protected property interest." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1317 (9th Cir. 1989) (emphasis added) (citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19, (1978); Sinaloa Lake Owners Ass'n v. City of Simi Valley, 864 F.2d 1475, 1481-82 (9th Cir.1989)). While Courts have recognized that a post-deprivation hearing can sometimes satisfy the requirements of due process, that is the exception, not the rule. See Soranno's Gasco, 874 F.3d at 1317 (noting that there are "exceptions to the pre-deprivation hearing requirement" permitting post-deprivation procedures such as "the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process"). Indeed, the Supreme Court has held "[w]e tolerate some exceptions to the general rule

requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993) (internal quotations and citations omitted); see also Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) ("post-deprivation process can suffice 'in limited cases' when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted.").

Here, Respondents have not offered any "necessity of quick action" or "impracticability of providing any meaningful predeprivation process" to justify reliance on post-deprivation process for revocation of Petitioner's release. Respondents reference to factual disputes concerning the grounds for Petitioner's re-detention only serves to further underscore the necessity for a pre-deprivation hearing. Accordingly, the Court finds that a post-deprivation hearing is insufficient in this case.

**D. Immediate Release Is the Appropriate Remedy**

Given this violation of Petitioner's due process rights in revoking his release status and re-detaining him on April 28th, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release on his own recognizance before his current re-detention. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal.

Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the wrongful deprivation of that status. For the same reason that Respondents may not revoke Petitioner's conditional release without affording Petitioner due process, they also may not change the conditions of that release without affording Petitioner due process. Return to the status quo similarly means return to Petitioner any personal property and documents seized at the time of his re-detention.

Finally, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)). Habeas relief is not limited to "discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds Petitioner has made such a showing here. He has suffered an irreparable injury by being re-detained without due process of law and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and sue to win his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing. Thus, a permanent injunction prohibiting Respondents from repeating the same unconstitutional re-detention of Petitoner that necessitated this habeas case is appropriate.

**E. Petitioner's Remaining Claims and Requests for Relief**

Because the Court concludes that Petitioner is entitled to release on procedural due-process grounds, it is unnecessary to reach his alternative arguments. See generally Pet. at 7-8.

Finally, the Court notes that Petitioner also requested an award of attorney's fees and costs. Prayer ¶ 7. The Court will consider requests for costs and attorney's fees upon compliance with Local Rules 54-2 (costs) and 54-7 (attorney's fees).

**5. ORDER**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release.

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is GRANTED.
2. Respondents shall immediately release Petitioner **GAGIK PETROSYAN, A-244-232-726**, from their custody, reinstate his release under the same conditions that were in place before his detention on April 28, 2026, and return any personal property and documents seized at the time of his detention;
3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release;
4. Within two days of this Order, Respondents shall file a status report confirming Petitioner's release and the return of his personal property and documents; and
5. Respondents shall not re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, notice and a pre-deprivation hearing.

IT IS SO ORDERED.

DATED: September 18, 2026

Dan Roberts

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE